# IN THE COURT OF APPEALS OF IOWA

No. 23-0250
Filed April 12, 2023

**IN THE INTEREST OF M.N.,**
**Minor Child,**

**L.N., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Fayette County, Linnea M.N. Nicol,

District Associate Judge.

A mother appeals the termination of her parental rights to her now three-

year-old son. **AFFIRMED.**

Kristin R. Schiller Herman, Calmar, for appellant mother.

Brenna Bird, Attorney General, and Ed Bull, Assistant Attorney General, for

appellee State.

Sarah Dooley-Rothman of Rothman Law Office, Independence, attorney

and guardian ad litem for minor child.

Considered by Tabor, P.J., and Schumacher and Ahlers, JJ.

**TABOR, Presiding Judge.**

A juvenile court terminated the legal relationship between M.N. and his parents. Only the mother, Lindsay, appeals. She does not contest the State's proof of grounds for termination under Iowa Code section 232.116(1) (2022). Instead, she argues termination of her parental rights was not in M.N.'s best interests and, in fact, was harmful to him because of their close bond. *See* Iowa Code § 232.116(2), (3)(c). She also asks for six more months to work toward reunification. *See id.* § 232.104(2)(b).

After an independent assessment of the record, we find the best-interests factors favor terminating Lindsay's parental rights.[1] We also find any harm that M.N. would suffer from the termination does not outweigh Lindsay's inability to meet his needs because of her substance-abuse and mental-health challenges. Finally, the record does not support delaying permanency. Thus, we affirm the termination order.

## I. Facts and Prior Proceedings

At his birth in February 2020, M.N. tested positive for methamphetamine, amphetamines, and THC—an active ingredient in marijuana. Because of the endangerment from these drugs, the Iowa Department of Health and Human Services offered the family voluntary services. But when Lindsay cut off

---

[1] Our standard of review for termination decisions is de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We give careful consideration to the juvenile court's factual findings and in-person observations, but we are not bound by them. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). Our top priority is the child's best interests. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (identifying safety and the need for a permanent home as the "defining elements" in the best-interests determination).

communication with the case manager, the department implemented a safety plan. From April 2021 until August 2021, M.N. and his two half-siblings lived with Lindsay at their maternal grandmother's house. But that safety plan ended when Lindsay declined to participate in random drug testing and was inconsistent with other services.

The State then sought to remove M.N. and the other two children from Lindsay's custody.[2] But the court allowed M.N. to stay with Lindsay "if and when she entered an in-patient substance abuse program" that permitted such a placement. So Lindsay entered treatment that fall, joined by M.N. By November, Lindsay was making positive strides. This progress prompted the court to consider a trial in-home placement when she left the program. But her progress stalled in December when she stopped participating in services. So the court approved M.N.'s removal from parental custody in January 2022. The child has been with the same foster family since then.

To enable M.N.'s safe return home, the court required Lindsay to obtain another substance-abuse evaluation and follow through with the evaluator's recommendations for treatment and testing. The court also expected Lindsay to seek mental-health counseling. But Lindsay fell short of the court's expectations. She continued to test positive for methamphetamine. Even during her testimony at the termination hearing in October 2022, the court noticed that Lindsay displayed "short, jerky movements" and "tics" consistent with methamphetamine use. During that emotional testimony, Lindsay acknowledged being her "own worst

---

[2] The half-siblings, J.N. and R.N., remained with their grandmother. They are not involved in this termination case.

enemy."[3]  But she also testified that she "accomplished a lot of stuff in the last few months" and asked the juvenile court to delay permanency for six months.

The court terminated Lindsay's parental rights under Iowa Code section 232.116(1), paragraphs (h) and (*l*).  The court also found termination was in M.N.'s best interests and no permissive exceptions applied.  *See* Iowa Code § 232.116(2), (3).  Lindsay now appeals that order.

## II.     Legal Analysis

**Best Interests.**   Because Lindsay does not challenge the grounds for termination, we start with the best-interests determination.  Lindsay contends that because she and M.N. share a strong bond, termination would not serve his emotional needs.

In deciding whether termination is in M.N.'s best interests, we give primary consideration to his safety; to the placement that would best further his long-term nurturing and growth; and to his physical, mental, and emotional condition and needs.  *See id.* § 232.116(2).  We also consider whether he is integrated into a family foster home, how long he has been in that placement, and the desirability of maintaining that environment.  *Id.* § 232.116(2)(b)(1).

The juvenile court recognized that M.N. has a "meaningful" bond with his mother.  He enjoys visits with her.  But even Lindsay acknowledged that time out

---

[3] Lindsay also testified that she stopped having contact with her boyfriend Chad, whom the juvenile court characterized as "a known drug user."  The court found earlier that Lindsay had not been honest about discontinuing that relationship.  The court directed that if Lindsay continued their relationship, Chad would have to participate in drug testing and family centered services.  The guardian ad litem believed that the "volatile relationship" between Chad and Lindsay negatively impacted the child.

of her care has diminished their connection: "I don't have enough time ever to have a bond back like we had because I get two hours a week." The court also noted that M.N. was integrated into his foster family and looked to them to fulfill his physical and emotional needs. Considering Lindsay's struggle for stability, the court decided termination was in M.N.'s best interests.

We reach the same conclusion. As the guardian ad litem described, Lindsay has "a serious substance abuse issue" that she has been unable to address. "[M.N.], if he were to be returned to her care does face harm." Because he was "thriving" with the foster parents and they were ready to adopt, she recommended termination of parental rights. We agree it is not in M.N.'s best interests to postpone permanency in the hope that Lindsay will someday be able to provide a stable home for him. *See P.L.*, 778 N.W.2d at 41.

**Permissive Exception.** Lindsay next invokes Iowa Code section 232.116(3)(c), contending termination would harm M.N. because of the closeness of the parent-child relationship. As discussed above, M.N. did enjoy a bond with Lindsay. And nobody doubts the sincerity of her love for him. But Lindsay has not proven that the loss of their admittedly waning bond would outweigh her inability to provide for M.N.'s developing needs. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). We do not find clear and convincing evidence that termination would harm M.N. based on the closeness of the relationship.

**Six-Month Delay.** Finally, Lindsay believes that the juvenile court should have delayed permanency under Iowa Code section 232.104(2)(b). She claims: "A short extension would have given [her] the opportunity to continue with her substance abuse and mental health treatment to allow for reunification."

A court may deny termination and give a parent six more months to reunify only if the need for removal will no longer exist at the end of that time. *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021). The evidence does not support such an optimistic prospect. Lindsay has not made the kind of progress necessary to extend the permanency deadline. Thus, termination was appropriate.

**AFFIRMED.**